PUBLIC OPINION PUBLISHING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4474. Promulgated May 6, 1927.

Commissioner's determination as to capital expenditures approved.

*Harry Harper, C. P. A.*, for the petitioner.
*S. S. Faulkner, Esq.*, for the respondent.

This proceeding is for the redetermination of deficiencies in income and profits taxes of $6,022.15 for 1920, and $1,705.06 for 1921. The issue raised is whether certain expenditures made during the respective years should be capitalized or deducted as ordinary business expenses.

#### FINDINGS OF FACT.

The petitioner, a South Dakota corporation located at Watertown, was organized approximately 19 years ago. It is engaged in job printing and publishing a daily newspaper. The capital stock of the corporation was and is $25,000.

Prior to 1920 the Non-Partisan League established a newspaper in Watertown, which was at the time supporting the daily published by the petitioner. Watertown has a population of about 10,000. The subscription campaign carried on by the newspaper cut down the circulation of the petitioner. To offset the losses sustained the petitioner held subscription campaigns in 1920 and 1921.

The petitioner's subscription list before the first campaign numbered approximately 5,200 subscribers. The campaign was conducted

by a professional campaign manager and field men. Premiums were offered and subscriptions solicited for periods from six months to three years. Most of the subscribers took the paper for a period of one year. All subscriptions were paid in advance. The cost of the 1920 campaign was $15,839.64. At the conclusion of the campaign the petitioner's subscription list had increased to 5,500. The 1921 campaign inaugurated late in 1920 cost the petitioner $11,592.59. It increased the circulation list to 7,200 subscribers. The expenditures made in 1920 and 1921 on the subscription campaigns covered money paid for the subscription contest manager, the people employed, general expenses in the way of getting subscribers and the premiums offered.

The petitioner did not place a value on its subscription lists, but the 1920 amended return carried them as an asset valued at $25,000. Another time an auditor of the petitioner's books carried the subscription lists at a value of $20,000 in certain statements which he prepared.

The amounts expended for the campaign in 1920 and 1921 were taken as deductions from gross income in the respective years by the petitioner. The respondent disallowed the deductions, capitalized the expenditures, and determined the asserted deficiencies.

### OPINION.

MORRIS: There is no doubt that the circulation structure of a newspaper is a capital asset, *Appeal of Danville Press, Inc.*, 1 B. T. A. 1171; *Appeal of Gardner Printing Co.*, 4 B. T. A. 37. It is likewise well settled that the circulation structure of a daily newspaper is an intangible asset. *Appeal of Herald-Despatch Co.*, 4 B. T. A. 1096. When such an asset is purchased, the amount expended therefor is a capital expenditure. *Appeal of Gardner Printing Co.*, supra; *Appeal of Pevely Dairy Co.*, 1 B. T. A. 385; *Appeal of Goodell-Pratt Co.*, 3 B. T. A. 30.

The specific question presented by this proceeding is whether when such an asset is developed by the corporation itself and the cost thereof charged to expense, such cost is a capital expenditure. The facts show that the purpose of the two campaigns was not only to maintain the number of subscribers, but to increase it. To the extent that the expenditures maintained the number of subscribers, they may be ordinary and necessary expenses, but we are unable to determine the amount allocable thereto. The Commissioner held that they were capital expenditures, and we can not determine from the record that he erred in that regard.

*Judgment will be entered for the respondent.*